UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT W. SUTHERLAND,

        Plaintiff,

v.

MICHAEL J. MIZER, JOHN M. CECIL, DAVID
RUIZ, JOHN DAKMAK, and ERIC RESTUCCIA,
WAYNE COUNTY,

        Defendants.

Case numbers 05-72496 & 06-15725

Honorable Julian Abele Cook, Jr.

ORDER

This case arises from the arrest and the unsuccessful prosecution of the Plaintiff, Scott

Sutherland, who had been charged with having committed two murders and one attempted murder.

Following his acquittal by a jury of these very serious criminal offenses, Sutherland filed this lawsuit

in which he has accused all of the Defendants of violating his federal and state constitutional rights.

Two of the Defendants, Special Federal Bureau of Investigation Agents, Michael Mizer and John

Cecil, have now asked the Court to dismiss Sutherland's claims against them on the basis of their

claimed qualified immunity defense. In a closely related companion case, the Government filed a

separate motion, seeking to obtain a dismissal of all of Sutherland's claims against them.[1]

---

[1]In Case No. 05-72496, Sutherland identified John Dakmak, Eric Restuccia, David Ruiz and
Wayne County as additional Defendants to the lawsuit. A summary judgment was granted in favor
of Ruiz on April 13, 2007. However, it should be noted that the remaining Defendants are not parties
to the two pending motions which have been examined and addressed by the Court in this order.
In Case No. 06-15725, which has been consolidated with Case No. 05-72496, Sutherland named the
United States of America as a Defendant, along with Cecil and Mizer. Both motions are currently
before the Court for its resolution of the contested issues.

At all times that are relevant to the issues in this case, Mizer and Cecil were assigned to an inter-agency task force on violent crime ("Task Force") whose members were selected representatives from various federal, state and local law enforcement agencies within the Eastern District of Michigan. According to Sutherland, this Task Force began its investigation into alleged criminal activities by various motorcycle clubs, including an organization (to wit, the Devil's Disciples) in which he held a membership. During the course of this investigation, one of his fellow motorcycle club members, Mark Berman, was arrested and charged with operating a methamphetamine laboratory. Berman, following his interrogation by Mizer and Ruiz, implicated Sutherland in a variety of violent criminal activities in the metropolitan region of Detroit, Michigan. It is Sutherland's belief that much of this information was false. Based on the information obtained from Berman, these two law enforcement officers arranged for the surveillance of Sutherland, which ultimately led to his arrest for facilitating the sale of illegal narcotics. Thereafter, Sutherland contends these two officers began to pressure him to act as a confidential informant, noting that they would do their best to "make things go easier" in his pending criminal case if he agreed to cooperate with them. When their proposals were rejected, Sutherland was subsequently tried, convicted and sentenced to federal prison for facilitating the sale of illegal narcotics.

From Sutherland's view point, his troubles with these law enforcement officers continued without abatement. He says that Special Agent Cecil convinced another motorcycle club member, George Millhouse, to act as an informer in exchange for a substantial reduction in the number of his pending felony charges. Sutherland maintains that on the basis of the false information from Millhouse, he was arrested once again and charged with having caused the murders of James Moore and Denise Robinson, the attempted murder of Paul Robinson, Jr., possessing a weapon during the

commission of a felony and being a felon in possession of a firearm. According to Sutherland, Mizer and Cecil told him that they "could make the charges go away" in exchange for his cooperation. He declined their offer.

When these efforts failed, Sutherland says that the members of this Task Force, acting through the Wayne County prosecutor's office, were active participants in the issuance of a legally defective arrest warrant which was based on the false information from Berman and Millhouse. He further alleges that Ruiz, Mizer, and Cecil purposefully ignored extremely relevant exculpatory information from the case files of the Detroit Police Department in order to produce his conviction. Thereafter, Sutherland submits that the case proceeded to a preliminary examination hearing and ultimately to a trial without this evidence being disclosed to the judge or the jury. On January 20, 2004, a jury acquitted him of all charges.

On June 23, 2005, Sutherland filed this lawsuit (Docket No. 05-72496), in which he raised a variety of claims against the Defendants, all of whom were accused by him of violating his constitutional rights under federal and state law.[2] On April 13, 2007, the Court granted a summary

---

[2]In Sutherland's first amended complaint ("FAC") in Docket No. 05-72496, which was filed by Sutherland on June 30, 2006, he sets forth the following claims; namely, (1) retaliatory prosecution; (2) violation of his right to freedom of association; (3) unreasonable arrest and seizure; (4) violation of his right to counsel and to be free from unlawful interrogation; (5) violation of his right to a fair trial and due process; (6) violation of his substantive right to due process; (7) malicious prosecution; (8) abuse of process; (9) conspiracy to violate his constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1985; (10) malicious prosecution under state law; (11) abuse of process under state law; (12) false arrest and imprisonment under state law; (13) civil conspiracy under state law; (14) gross negligence under state law; (15) "avoidance of governmental immunity"; (16) concert of action for each violation of state law; (17) wrongful application of the respondeat superior doctrine; and (18) violation of federal law (42 U.S.C. § 1983) by the County of Wayne in Michigan. This order will not address the "avoidance of governmental immunity" claim, which applies only to lawsuits against state and local governmental entities and their employees. Mich. Comp. Laws § 691.1407. The first amended complaint, though substantially similar, was modified to reflect that Cecil and Mizer were being sued individually and as agents of the United States Federal Bureau of Investigation pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

judgment in favor of Ruiz after determining that his decision to seek an arrest warrant was reasonably objective and supported by probable cause. The Court also found that Ruiz had garnered information from multiple sources, all of whom had implicated Sutherland in the shootings of James Moore, Denise Robinson and Paul Robinson, Jr. Furthermore, the Court rejected the argument by Sutherland that Ruiz had relied solely on flawed information from the two motorcycle club members, Berman and Millhouse.

On December 26, 2006, Sutherland filed a separate lawsuit ( Docket No. 06-15725), seeking relief against Cecil, Mizer and the United States of America.[3]

## II.

The dismissal of a civil case under Rule 12(b)(6) of the Federal Rules of Civil Procedure is warranted in those situations whereby a plaintiff, through a complaint, "fail[s] to state a claim upon which relief can be granted." *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). In resolving a dispositive motion which seeks relief under this Rule, the Court must construe the language within the complaint in a light that is most favorable to the plaintiff and, in doing so, accept all the factual allegations therein as being correct. *Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir. 1995). Although a complaint need not proffer a set of detailed

---

[3]In the first eight counts within Sutherland's complaint in Docket No. 06-15725, he raises federal constitutional claims that are identical to those asserted in the first eight counts of Docket No. 05-72496. Inasmuch as the accusations in these eight counts are the same, this order will address both sets of claims simultaneously. The remaining counts within Sutherland's second lawsuit have incorporated his claims of alleged violations of federal and state law by the named Defendants as follows: (1) malicious prosecution in violation of state law; (2) an abuse of process in violation of state law; (3) false arrest and imprisonment in violation of state law; (4) civil conspiracy in violation of state law; (5) gross negligence in violation of state law; (6) "avoidance of governmental immunity;" (7) violations of federal law (Federal Tort Claims Act) by the United States Government; and (8) violations of constitutional rights by Cecil and Mizer under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The order will not address the "avoidance of governmental immunity" claim. *See* note 3, *supra.*

factual allegations, the aggrieved party must nevertheless submit a pleading with more than general conclusions and a ritualistic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level and the pleading must contain something more than a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.") (citations and quotation marks omitted).

A.    Cecil and Mizer's Joint Motion to Dismiss

      1.    Defendants' Qualified Immunity Defense to Sutherland's Bivens Claims

Sutherland brought his lawsuit against Cecil and Mizer for their alleged violations of his constitutional rights, citing to 42 U.S.C. § 1983 and relying upon *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[4] However, these claims are limited by the doctrine of qualified immunity[5] which "extends to government officials performing discretionary functions." *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999). The defense protects public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Pursuant to this doctrine, government officials, while acting in their official capacities, are immune from personal civil liability as long as their actions do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id* at 818 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("Whether an official protected by qualified immunity may be

_____

[4]In *Bivens*, the Supreme Court recognized an implied right of action for damages against federal officials for certain constitutional violations.

[5]The Supreme Court has noted that the qualified immunity analysis applies with equal force to each of these claims. *Butz v. Economou*, 438 U.S. 478, 504, (1978) (it would be "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials").

held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken."). Thus, a government employee will be shielded from liability if he acted under the objectively reasonable belief that his actions were lawful. *Ahlers v. Schebil,* 188 F.3d 365, 372-373 (6th Cir. 1999). Although a defendant bears the initial burden of pleading the defense of qualified immunity, an aggrieved person - such as Sutherland - must ultimately demonstrate that the alleged tortfeasors are not entitled to protection under the doctrine. *Williams v. Payne, et al.*, 73 F. Supp. 2d 785, 795 (E.D. Mich. 1999), citing *Blake, supra* at 1007.

      (a)      <u>Claims Involving a Probable Cause Determination</u>

In Counts I, III and VII of the amended complaint in Docket No. 05-72496, Sutherland has asserted claims for retaliatory prosecution, false arrest and malicious prosecution, respectively. In order to establish each claim, he must prove that the Defendants lacked probable cause to support his arrest. *See, Hartman v. Moore,* 547 U.S. 250 (2006) (plaintiff must plead and prove absence of probable cause as element of retaliatory prosecution claim,); *Crockett v. Cumberland Coll.,* 316 F.3d 571, 580 (6th Cir. 2003) (claim for wrongful arrest turns on whether officer had probable cause under the Fourth Amendment); *Barnes v. Wright,* 449 F.3d 709 (6th Cir. 2006) (plaintiff alleging malicious prosecution must show that no probable cause existed to justify arrest and prosecution).

A police officer is subject to liability "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized" *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The *Malley* Court further noted that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost" *Id* at 344-45 (internal citations omitted).

Probable cause to justify an arrest exists where there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed. . . an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause requires only the probability of criminal activity, not some type of prima facie showing. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988).

The probability of criminal activity is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time . . . ." *Crockett, supra* at 580.

Here, Sutherland alleges in his amended complaint that Mizer, Cecil, and Ruiz caused an arrest warrant to be issued without probable cause. It is his contention that (1) this warrant was based upon information which these law enforcement officers knew was false or unreliable, and (2) it failed to reflect the existence of exculpatory information.[6] However, it should be noted that the Court has already ruled against Sutherland on this point when a summary judgment was granted to Ruiz in its April 13, 2007 and October 26, 2007 orders.[7] In the latter order, the Court specifically rejected Sutherland's probable cause analysis,[8] finding that contrary to his assertions, there was "no

_____

[6]In his reply brief, Sutherland urges the Court to consider evidence beyond the four corners of the complaint to support this assertion. Nevertheless, the Court will not consider the proffered evidence, inasmuch as doing so would convert the Defendant's pending motion from a Rule 12(b)(6) motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 56(c). *See generally,* Rule 12(d); *Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998).

[7] The first order denied relief for the reasons that were stated on the record during the April 3, 2007 hearing.

[8] In part, the Court based its order of October 26, 2007 on the evidence in the record which showed that Paul Robinson's brother and father had told Ruiz that Sutherland had been seen at the scene of the crime on the day of the shooting. Furthermore, Millhouse, Berman and Robinson's father had told Ruiz that they had heard "on the street" comments about Sutherland's role in the

evidence that Ruiz intentionally omitted any material facts or knowingly made false representations to the judicial officer who ultimately authorized the arrest warrant." Order, October 26, 2007. In granting the summary judgment to Ruiz, the Court concluded that this law enforcement officer had acted reasonably when he used the information from Paul Robinson and four other persons in order to obtain a warrant for Sutherland's arrest.

In their challenge to Sutherland's argument, the Defendants contend that the doctrine of collateral estoppel precludes him from relitigating this issue. The doctrine of collateral estoppel provides that "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies." *Aircraft Braking Systems Corp. v. Local 856, Intern. Union, United Auto.*, 97 F.3d 155 (6th Cir. 1996) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Within the Sixth Circuit, the doctrine of collateral estoppel is applicable whenever (1) the precise issue was raised and actually litigated in the prior proceeding; (2) a determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior litigation produced a final judgment on the merits; and (4) the party against whom the collateral estoppel doctrine is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *U.S. v. Cinemark USA, Inc.,* 348 F.3d 569 (6th Cir. 2003).

Sutherland submits that under part 1 of the foregoing collateral estoppel analysis, the precise issue of whether Cecil and Mizer had probable cause had not been addressed when Ruiz's summary judgment motion was resolved. Thus, he suggests the finding by the Court (namely, that Ruiz had acted with probable cause) does not automatically extend to these two agents.

However, this argument is flawed for several reasons. Sutherland has acknowledged that
_____
murders.

Ruiz was the officer in charge of the Government's case against him. Therefore, Ruiz was the law enforcement officer who was directly responsible for coordinating the investigation and presenting the gathered evidence to the prosecutor's office. *Sutherland's Response at 7.* Nevertheless, it seems to be Sutherland's contention that Cecil and Mizer had separate and independent duties to assess the case for probable cause. However, Sutherland's position appears to be inconsistent with relevant case law which recognizes that a law enforcement officer is generally entitled to rely upon a fellow officer's findings. *See generally, Whiteley v. Warden*, 401 U.S. 560 (1971) ("police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause"). On the other hand, if the information clearly suggests that it is incorrect, then, and under these circumstances, an otherwise illegal arrest will not be shielded from challenge. *Collins v. Nagle,* 892 F.2d 489, 495 (6th Cir. 1989) ("probable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest"); *See e.g., U.S. v. Woods*, 544 F.2d 242, 259-60 (6th Cir. 1976) (collective knowledge of agents working as a team may be considered together in determining probable cause); *U.S. v. Hensley,* 469 U.S. 221 (1985) (articulating same principle in context of *Terry* stops). Sutherland has offered no authority to support his claims to the contrary.

In light of the declaration by the Court that probable cause existed to support the application for an arrest warrant by Ruiz, Sutherland is now collaterally estopped from relitigating this issue in the pending motions. Therefore, each of the Defendants are entitled to qualified immunity as to Counts I, III and VII inasmuch as Sutherland has been unable to demonstrate that these law enforcement officers, while acting with probable cause, violated a clearly established right. *Malley, supra.*

(b)     Claim for Violation of Sutherland's Right to Freedom of Association

In 1984, the Supreme Court acknowledged the existence of an individual's right to freedom of association under the First Amendment in two distinct contexts; namely, (1) the right to "enter into and maintain certain intimate human relationships"; and (2) the right to "associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). Several years later, the Supreme Court described the latter right as being "crucial in preventing the majority from imposing its views on groups that would  rather express other, perhaps unpopular, ideas." *Boy Scouts of America v. Dale,* 530 U.S. 640, 647-48 (2000) (quoting *U.S. Jaycees* for the proposition that the right to expressive association is "especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority").

When pointing to Count II of his amended complaint, Sutherland submits that he possessed a clearly established right to belong to the Devil's Disciple's Motorcycle Club.  *FAC ¶ 60-62.* However, in making this allegation, it is significant to note that Sutherland has not asserted that his affiliation with the motorcycle club stemmed from any "intimate human relationships."  Thus, one may fairly conclude that his claim is based on the right to engage in a First Amendment protected activity.  For a group to claim protection under this prong of the First Amendment, it must have engaged in an "expressive association," which refers to "some form of expression, whether it be public or private." *Boy Scouts of America, supra* at 647.

Although Sutherland has maintained a  right to associate with the Devil's Disciples organization, his amended complaint does nothing to identify or to specify the group's expressive activity.  Moreover, it fails to provide a general description of the group, its mission and/or its

values. None of these factual allegations identify those aspects of the group's association that can be construed as an expressive activity. The Defendants correctly note that this failing is, in their collective opinion, fatal to Sutherland's freedom of association claim. *See, e.g. Villegas v. City of Gilroy*, 484 F.3d 1136, 1142 (9th Cir. 2007) (rejecting freedom of association claim asserted by members of motorcycle club where there is no evidence that club engaged in type of expression protected by First Amendment). In his response to the Defendants' motion, Sutherland has failed to address their arguments. Inasmuch as he is the party who has the responsibility of challenging the qualified immunity defense, Sutherland has not sufficiently pled a violation of a clearly established right. Therefore, the Defendants are entitled to qualified immunity for this claim.

(c)    Claim for Violation of Sutherland's Fifth, Sixth and Fourteenth Amendment Rights

In Count IV of the amended complaint, Sutherland asserts a clearly established right under the Fifth and Fourteenth Amendments to be free from compelled self-incrimination, "whether or not he makes any incriminating statements." *FAC ¶ 75.* He also claims to have a right under the Sixth Amendment to have counsel present during any interrogation, *FAC ¶ 74*, as well as a due process right under the Fourteenth Amendment to be free from coercive behavior by government actors. *FAC ¶ 76.* In addition, Sutherland maintains that Mizer violated these fundamental rights when he, with Ruiz, conducted an unlawful and coercive interrogation five days after acquiring the warrant for his arrest. *FAC ¶ 78.* It is his specific contention that he was subjected to a custodial interrogation without being advised of his rights to counsel and to refrain from responding to questions from law enforcement officers. Sutherland also complains that these law enforcement officers attempted to compel his cooperation with promises that they could make the homicide charges "disappear." *FAC ¶ 79.* However, it should be noted from earlier portions of Sutherland's pleadings that he had steadfastly rejected the overtures by Mizer and Cecil to cooperate with their

investigations. *FAC ¶ 23, 25.* Although Sutherland has impliedly conceded that he never made any incriminating statements during the extended interrogation process, he, nevertheless, argues that the coercive questioning constitutes a *per se* constitutional violation, relying on *Cooper v Dupnik,* 963 F.2d 1220 (en banc) (9th Cir. 1992). However, Sutherland's reliance on *Cooper* is misplaced. The majority in Cooper broke new ground when it held that a § 1983 claim for a violation of the self-incrimination clause under the Fifth Amendment was established with the plaintiff's allegations that his statements - though not used against him in a court of law - had been compelled. *Id* at 1242-43. The dissenting judges in *Cooper* argued that the Fifth Amendment privilege against self incrimination is not violated until such time as the challenged evidence is proffered in a criminal trial setting. *See Id* at 1253-57. This disagreement, and later opinions from other courts of appeal, clearly indicate that the law on which Sutherland relies is not clearly established. *See also*, *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (rejecting reasoning expressed in *Cooper* where defendant Martinez "was never made to be a 'witness' against himself in violation of Fifth Amendment's self-incrimination clause because his statements were never admitted as testimony against him in a criminal case ")

Furthermore, the facts in *Cooper* were inapposite to the case at hand. There, the police admitted that they had pursued an interrogation plan which ignored the suspect's repeated requests to speak with an attorney, deliberately infringed upon his right to remain silent, and relentlessly questioned him in an effort to extract a confession. 963 F.2d at 1223-32. Here, the situation is quite different, in that Sutherland has acknowledged that he (1) never yielded to the pressures from the interrogating law enforcement officers to render an incriminating statement, or (2) was unaware of any pre-existing plan to interrogate him in such a manner as to touch upon his rights under the Fifth Amendment. Inasmuch as Sutherland has not proffered the violation of any clearly established right

under the Fifth Amendment, the Defendants are entitled to receive the protections of qualified immunity for this portion of his charges against them.

In their challenge to Sutherland's Sixth Amendment right to counsel analysis, the Defendants also maintain that they are entitled to assert the protections of qualified immunity because their failure to give *Miranda* warnings does not constitute an independent constitutional tort. See generally, *Chavez*, supra at 772 (construing *Miranda* requirements as rules designed to safeguard substantive constitutional right, and quoting *Michigan v. Tucker,* 417 U.S. 433, 444 (1974) which observed that *Miranda's* "procedural safeguards were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected."). Thus, the remedy for a *Miranda* violation is to exclude the evidence of any unlawfully compelled self-incrimination tactics. Significantly, it does not constitute a cause of action under § 1983. *Warren v. City of Lincoln, Neb.* 864 F.2d 1436, 1442 (8th Cir. 1989).

Although the issue was not addressed by the parties, Sutherland's pleadings do not establish a violation of his Sixth Amendment right to counsel. *See generally, Kirby v. Illinois,* 406 U.S. 682, 688-89 (1972) ("a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him"). With recognition that Sutherland had not alleged the violation of any clearly established Sixth Amendment right, the Defendants are entitled to the protections of qualified immunity for this portion of Sutherland's Count IV claim.

    (d)    <u>Claim for Violation of Sutherland's 5th Amendment Right to a Fair Trial</u>

Sutherland alleges that the Defendants collectively violated his right to a fair trial by (1) initiating criminal proceedings without probable cause; (2) failing to disclose the obligatory *Brady* evidence; (3) suborning perjury from Berman and Millhouse; and (4) engaging in improper contacts

with the judge who presided over his criminal trial.[9]

To the extent that Sutherland has based this portion of his amended complaint on the absence of probable cause prior to the commencement of the trial, this is an issue that is now barred by the doctrine of collateral estoppel, as explained above. Moreover, Sutherland concurs with the Defendants who argue that the duty to disclose exculpatory information to an accused person under *Brady* rests with the prosecutor - not with Cecil or Mizer. *Giglio v. U.S.,* 405 U.S. 150, 154 (1972) ("whether the nondisclosure [under *Brady*] was a result of negligence or design, it is the responsibility of the prosecutor"). Perhaps more importantly, the Defendants correctly proclaim that no actionable *Brady* violation exists where the accused is ultimately acquitted. *Strickler v. Greene,* 527 U.S. 263, 282 (1999) (aggrieved individual must show prejudice to establish *Brady* violation); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) (rejecting § 1983 due process action based on *Brady* violation where criminal proceedings were terminated in favor of plaintiff who could not produce any demonstrable tort injury). Because Sutherland has not sufficiently alleged the violation of a clearly established right, the Defendants are entitled to qualified immunity for Count V.

      (e)      <u>Claim for Violation of Sutherland's Substantive Due Process Rights</u>

An aggrieved person is entitled to raise a substantive due process claim if a particular violation is not covered by a more definite constitutional provision. Sutherland correctly notes that "the touchstone of due process is protection of the individual against arbitrary action of

---

[9]Sutherland's amended complaint contains no factual allegations with which to support his claims (3) and (4) above. Hence, he has failed to set forth a violation of a clearly established right. It should also be noted that Sutherland's arguments which speak to the issue of suborned perjury would be barred by the Defendants' absolute immunity protection. *See Spurlock v. Satterfield,* 167 F.3d 995, 1001 (6th Cir. 1999) ("[i]t is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings," and that alleging a conspiracy to render false testimony does not abrogate this absolute immunity).

government." *County of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998). Only the most egregious official conduct can be said to be arbitrary in the constitutional sense of the word. *Id* at 846.

The test, as articulated by the Supreme Court over a half century ago, is whether the challenged conduct "shocks the conscience." *Id* (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435(1957), which noted that only conduct which was so brutal and offensive that it did not comport with the traditional ideas of fair play and decency would violate substantive due process).

Thus, it is Sutherland's position that the Defendants engaged in a level of conduct which was shocking to the conscience when they deliberately initiated a prosecution for murder without probable cause, all for an act of criminality that the police knew had not been committed by him.

The specific claims which form the basis for this substantive due process matter merely replicate Sutherland's allegations in Counts I, III, V and VII. He seems to have acknowledged that the provisions within these four counts provide an explicit textual source of constitutional protection against the governmental conduct about which he complains in Count VI. As a result, those provisions - not the more generalized notion of "substantive due process" - must be the guide for analyzing these claims. *See, e.g. Graham v. Connor,* 490 U.S. 386, 395 (1989). The unfortunate fact that Sutherland cannot meet the analysis of his First, Fourth, Fifth and Sixth Amendment claims does not change this result. Hence, Sutherland's substantive due process claim must also fail.

    (f)    <u>Claim for Abuse of Process in Violation of Sutherland's Fourth, Fifth and Fourteenth Amendment Rights</u>

In a decision as recently as 2005, the Sixth Circuit Court of Appeals observed that it has never specifically decided whether a claim for "abuse of process" is constitutionally cognizable and if it is subject to redress under § 1983. *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 676 (6th Cir. 2005). Nevertheless, Sutherland advances the argument that the absence of a definitive decision by the Court of Appeals for the Sixth Circuit regarding this specific issue does not run

counter to his claim that the Defendants violated a "clearly established" right. His analysis ignores a well-settled precedent which requires courts to look to the law within this Circuit to determine which rights are deemed to have been "clearly established." *See generally, Baker v. City of Hamilton, Ohio,* 471 F.3d 601 (6th Cir. 2006) ("In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits"). To the extent that *Voyticky* leaves the question open within the Sixth Circuit, it cannot be argued with any degree of persuasiveness that Cecil and Mizer knew or should have known that Sutherland had a clearly established right to be free from an abuse of process under the specific circumstances of this case. Thus, the Court concludes that the Defendants are entitled to qualified immunity on this issue.

(g)     Claim of Violations of 42 U.S.C. § 1983 By Cecil and Mizer

The claims, which have been asserted by Sutherland in Count IX , necessarily rely upon the same constitutional arguments that have been previously addressed and rejected by the Court. Thus, the Court determines that his claims under §§ 1983 and 1985 must fail as a matter of law.

2.     State Law Claims Against Cecil and Mizer

Sutherland concedes that the state torts against Cecil and Mizer must be raised under the Federal Tort Claims Act. Therefore, his claims against the Defendants must be dismissed.

B.     The Government's Motion to Dismiss

In the two cases that are currently under scrutiny by this Court (Docket Nos. 05-72496 and 06-15725), it is Sutherland's contention that Cecil and Mizer committed several unlawful acts of state tort law against him. Yet, standing in his way is the Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C.§ 2679, more commonly known as the "Westfall Act," which

amended the Federal Tort Claims Act, 28 U.S.C. § 2679(b)(1),[10] by establishing a mechanism for the substitution of the United States as a defendant in any lawsuit where one of its employees is sued for damages as a result of an alleged common law tort that had been committed by him within the scope of his employment.

In its pending motion, the Government seeks to obtain the dismissal of Counts X through XVI of Docket No. 05-72496 and Counts IX through XV of Docket No. 06-15725. *Government's Motion to Dismiss at 7.*

(1)    Subject Matter Jurisdiction Over Sutherland's State Law Claims in 05-72496

Any person who seeks to initiate a claim under the Federal Tort Claims Act must exhaust his administrative remedies before filing a lawsuit in a federal court. 28 U.S.C. § 2675(a) provides that "[a]n action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." The exhaustion requirement is jurisdictional and cannot be waived. *Barnett v. Okeechobee Hosp.,* 283 F.3d 1232 (11th Cir. 2002).

In Sutherland's complaint in Docket No. 06-15725, he acknowledges having filed an administrative claim with the Federal Bureau of Investigation on January 19, 2006, which was denied on July 14, 2006. *Complaint, Docket No. 15725 ¶ 12.* However, the Government points out that in Sutherland's second case (Docket No. 05-72496), his initial complaint and first amended complaint were filed prior to this date.[11] Therefore, according to the Government, the Court must

---

[10]Relying upon the provisions of the Westfall Act, a designee of the United States Attorney General has certified that Sutherland's claims are based upon actions that had been taken by Cecil and Mizer in the scope of their federal employment. As such, this certification is a sufficient basis upon which to substitute the United States as the Defendant in place of Cecil and Mizer.

[11]Sutherland's original complaint in Docket No. 05-72496 was filed on June 23, 2005. His first amended complaint was filed on June 30, 2006.

dismiss any claims in Docket No. 05-72496 that can be construed as asserting Federal Tort Claims Act claims for lack of subject matter jurisdiction.

Sutherland does not contest the Government's position, and in doing so, concedes that the Defendants' position is legally correct. *See McNeil v. U.S.,* 508 U.S. 106, 112 (1993) ("The most natural reading of the statute indicates that Congress intended to require complete exhaustion of executive remedies before invocation of the judicial process"). Thus, in addition to the reasons that have been articulated in *Part A*, the Court dismisses the state law claims in Docket No. 05-72496 for lack of subject matter jurisdiction.

(2)      Sutherland's State Law Claims in 06-15725

     (a)      Statute of Limitations as to Counts X (Abuse of Process) and Count XI (False Arrest)

Under the Federal Tort Claims Act, a plaintiff must raise any tort claim against the United States with the appropriate federal agency within a period of two years after the claim has accrued. 28 U.S.C. § 2401(b). The Government maintains that Sutherland's abuse of process, false arrest, conspiracy and gross negligence claims must fail because all of them were submitted to the Federal Bureau of Investigation on January 19, 2006 - beyond the two year statute of limitations period. The Government urges the Court to find that (1) the false arrest claim accrued on May 29, 2003 (the date on which Sutherland claims to have been arrested), and (2) the abuse of process claim accrued on May 29, 2003 (the date on which the Defendants initiated criminal proceedings against him based on the alleged false information). The Government further suggests that the conspiracy and gross negligence counts are untimely to the extent that they rest on Sutherland's false arrest and abuse of process claims.

Sutherland disagrees, maintaining that his claims did not accrue until the last day of trial – January 20, 2004 – when he first learned that the Government had allegedly suppressed the

exculpatory evidence. In the alternative, Sutherland submits that his Federal Tort Claims Act claims would not have accrued since the lack of probable cause is necessary to succeed on several of the torts. Thus, he submits that, in the absence of an acquittal, probable cause would have been presumed. However, Sutherland's argument is unavailing in light of the decision in 2007 by the Supreme Court in *Wallace v. Kato,* 127 S.Ct. 1091, 1096 (2007), which observed that "false imprisonment consists of detention without legal process" which means, in effect, that "false imprisonment ends once the victim becomes held pursuant to such process - when, for example, he is bound over by a magistrate or arraigned on charges." Based on the holding in *Kato,* Sutherland's false arrest claim would have accrued during the days or weeks after May 29, 2003 when he was formally charged with the homicides et al. Even this date is liberally by the Court in Sutherland's favor, it would compel a finding that the statute of limitations expired on this claim during the latter part of 2005 - well before the January 19, 2006 date on which his complaint was filed with the Federal Bureau of Investigation.

Sutherland's state law claim for an abuse of process must also fall for similar reasons. His complaint alleges that government agents abused the legal process by (1) initiating and maintaining improper criminal proceedings against him, (2) suppressing exculpatory evidence throughout trial, (3) using false evidence to obtain an arrest warrant, and (4) suborning perjury during his trial. While the complaint does not allege the specific date upon which the trial began, it does identify January 20, 2004 as the last day of the criminal proceeding. Therefore, it is reasonable to conclude that any abuse of the legal process necessarily began at some time prior that date. Therefore, it would have become imperative for Sutherland to file his administrative complaint with the Federal Bureau of Investigation within two years of that unspecified date - but definitely before January 20, 2006. Unfortunately, neither Sutherland's complaint nor his response to the Government's pending

dispositive motion offer any specific time frames that could guide the Court in its analysis of this issue. Moreover, Sutherland has failed to provide any legal authority to support his argument that these now challenged claims did not accrue until he actually learned of the suppression of the exculpatory evidence. Without more, the Court concludes that Sutherland's abuse of process claim was not timely filed.

(b)     Failure to State a Claim as to Counts IX - XIII

The Government urges the Court to determine that Sutherland is collaterally estopped from raising state law claims for malicious prosecution and false arrest because both torts require an absence of probable cause. In light of a finding by the Court that there was a sufficiency of probable cause upon which to justify Sutherland's arrest, the Defendants' position is deemed to be correct. *See generally, Part A, supra; Rivers v. Ex-Cell-O Corp.*, 100 Mich. App. 824, 832; 300 N.W.2d 420, 424 (Mich. App. 1980) ("The elements of a cause of action for malicious prosecution are (1) a criminal prosecution instituted against plaintiff by defendant, terminating in plaintiff's favor, (2) absence of probable cause for the criminal proceeding, and (3) malice or a primary purpose in bringing the action other than bringing the offender to justice."); *Peterson Novelties, Inc. v. City of Berkley,* 259 Mich. App. 1, 18; 672 N.W.2d 351, 362 (Mich. App. 2003) ("To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause. If the arrest was legal, there has not been a false arrest or a false imprisonment.") (internal citations and quotations omitted).[12]  These two claims must

---

[12]Sutherland makes ancillary arguments that his malicious prosecution claim stems from allegedly false or misleading testimony. But, as discussed in *Part A, supra,* Cecil and Mizer would be entitled to the protections of absolute immunity for any perjured testimony that they procured or were provided. *Spurlock, supra* n. 10. To the extent that Sutherland's malicious prosecution claim rests upon the failures of Cecil and Mizer to disclose exculpatory evidence, such a duty rests with the prosecutor - not with their investigative agency. *Part A, supra*; *Giglio v. U.S., supra; Strickler v. Greene, supra.*

therefore fail as well.

Sutherland also asserts claims of gross negligence against Cecil and Mizer, both of which that are based on Michigan state law. The Government posits that these claims must fail because Sutherland's claims are predicated on intentional, rather than negligent, conduct. Sutherland does not address this argument in his response. To the extent that his gross negligence claim rests upon the intentional torts which were set forth in the balance of his complaint, the Government's analysis prevails. *Complaint, Docket No. 06-15725 ¶ 144*; *VanVorous v. Burmeister*, 262 Mich. App. 467, 483; 687 N.W.2d 132, 143 (Mich. App. 2004) ("this Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence"). Accordingly, Sutherland's gross negligence claim cannot proceed as a matter of law.

The Government submits that Sutherland has not alleged a cause of action for abuse of process under Michigan law. In order to state a claim for relief under this theory, a plaintiff must plead (1) an ulterior purpose, and (2) an act in the use of a process that is improper in the regular prosecution of the proceeding. *Bonner v. Chicago Title Ins. Co.*, 194 Mich. App. 462, 472; 487 N.W.2d 807, 812 (Mich. App. 1992). This tort contemplates a situation wherein a defendant uses an otherwise proper legal proceeding to advance an ulterior and improper purpose. *Vallance v. Brewbaker,* 161 Mich. App. 642, 646; 411 N.W.2d 808, 810 (Mich. App. 1987). In rendering its decision, the *Vallance* court explained that "the improper ulterior purpose must be demonstrated by a corroborating act; the mere harboring of bad motives on the part of the actor without any manifestation of those motives will not suffice to establish an abuse of process." *Id.*

The Government contends that Sutherland has failed to adequately plead the presence of a valid corroborating act, such as (1) neither Cecil nor Mizer had a duty to disclose *Brady* material; (2) offering to eliminate pending charges is a routine part of plea bargaining; and (3) the suppression

of evidence, falsification of statements and refusal to produce discovery reflect a desire to secure a conviction through improper means, but do not provide corroborating evidence of the alleged ulterior purpose.

Sutherland has not responded to the Government's arguments which the Court has found to be persuasive. Inasmuch as he has not alleged specific acts which demonstrate that the Defendants attempted to extort something from him, separate and apart from the relief sought in the murder prosecution, his claim for abuse of process must also fail. *See e.g., Spencer v. Armstrong,* No. 245419, 2004 WL 1227657 at *2 (Mich. App. June 3, 2004) (per curiam).

Finally, the Government argues that Sutherland's civil conspiracy count must also fail because it relies upon his arguments for malicious prosecution, abuse of process and false arrest, which have all been rejected by the Court. This analysis is proper, and, once again, Sutherland has failed to respond to the Government's claim. Inasmuch as Sutherland has not stated any actionable tort upon which to base his conspiracy claim, this count must also fail as a matter of law. *See Early Detection Center, P.C. v. New York Life Ins. Co.*, 157 Mich. App. 618, 632; 403 N.W.2d 830, 836 (1986) ("claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort . . . since plaintiffs have failed to state any actionable tort theories in their proposed amended complaint, the conspiracy theory must also fail").

### III.

For the reasons that have been set forth above, the Defendants' motions to dismiss in Docket No. 05-72496 and Docket No.06-15725 must be, and are, granted in their entirety. In both cases, the Court finds that Sutherland's complaint has failed to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:  May 6, 2008          s/ Julian Abele Cook, Jr.          
        Detroit, Michigan            JULIAN ABELE COOK, JR.
                                      United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on May 6, 2008.


                                      s/ Kay Alford          
                                      Case Manager